JUSTIN A. BRACKETT (HI Bar No. 9954)
1888 Kalakaua Avenue, Suite C-312
Honolulu, HI  96815
Telephone: (808) 377-6778
Email:  justinbrackettlaw@gmail.com

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARIA SNYDER, ) | CASE NO. 1:16-CV-97 |
| ) | |
| Plaintiff, ) | COMPLAINT FOR DAMAGES |
| vs. ) | DECLARATORY AND INJUNCTIVE |
| ) | RELIEF, EXHIBITS 1 THROUGH 3, |
| CACH, LLC, and ) | and VERIFICATION |
| MANDARICH LAW GROUP, LLP, ) | |
| ) | JURY TRIAL REQUESTED |
| Defendants. ) | |

---

## COMPLAINT

---

## <u>INTRODUCTION</u>

1.     Jurisdiction of this Court arises under 28 U.S.C. § 1331 pursuant to 15 U.S.C. § 1692k(d) as well as 28 U.S.C. § 1367 (supplemental jurisdiction).

2.     This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq*. ("FDCPA"), in their illegal efforts to collect a consumer debt.  This is also an action for damages against the Defendants for unfair or deceptive acts or practices in the conduct of trade or

commerce in violation of Sections 443B-18, 19, and 20 of the Hawaii Revised Statutes.

3.      Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

## PARTIES

4.      Plaintiff Maria Snyder (hereinafter "Plaintiff" and/or "Ms. Snyder") is a natural person who resides in Honolulu County, Hawai'i, and a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and a "Debtor" as that term is defined by Haw. Rev. Stat. § 443B-1.

5.      Defendant CACH, LLC (hereinafter "Defendant CACH") is a "debt collector" as defined by 15 U.S.C. § 1692a(6), and a for-profit corporation organized in Colorado, and maintains The Corporation Company, 1675 Broadway, Suite 1200, Denver, CO  80202-4675, as its registered agent for service of process.

6.      Defendant Mandarich Law Group, LLP (hereinafter "Defendant Mandarich" or "Mandarich") is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), a for-profit corporation organized in California that maintains Robert E. Chapman, 700 Bishop Street, Suite 2100, Honolulu, HI  96813, as its registered agent for service of process.

7.      Other defendants may be discovered in the course of litigation, and Plaintiff respectfully prays that the Court will permit the addition of later

discovered parties upon motion.

## FACTUAL ALLEGATIONS

8.     Defendants have alleged that Ms. Snyder incurred an obligation to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, and this debt is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).  More specifically, this debt is a credit card debt originally owed to, or serviced by, Bank of America, N.A.

9.     The primary purpose of all Defendants' businesses is the collection of debts.

10.     Although they conduct business and receive income in the State of Hawaii, neither Defendant CACH, nor Defendant Mandarich has a Hawaii General Excise Tax license.

11.     Defendant Mandarich actively collects debts in the State of Hawaii by sending letters, making telephone calls, and suing Hawaii residents.

12.     Defendant CACH is not licensed to conduct any business in the State of Hawaii.

### *Bank of America's Reporting to the Equifax Credit Reporting Agency*

13.     Equifax is a consumer credit reporting agency as defined in 15 U.S.C. § 1681a(f), and regularly engages in the business of assembling, evaluating, and

disseminating information concerning consumers for the purpose of furnishing credit reports to third parties.

14.     Ms. Snyder obtained a copy of her Equifax credit report dated June 23, 2015.    That report shows that Bank of America has been communicating information to Equifax about the alleged debt.   *Copy filed as Exhibit 1.*

15.     Bank of America has been communicating information regarding the debt to Equifax since at least October 2003, with the account reported by Bank of America as being charged-off with a "Date of First Delinquency" of April, 2009. *See Ex. 1.*

16.     Bank of America reported to Equifax that the balance of Ms. Snyder's account at the time of charge-off was $6,835. *See Ex. 1.*

### *Defendants' May 2, 2015 Collection Letter*

17.     On May 2, 2015, Defendant Mandarich sent Ms. Snyder a letter demanding $8,765.10 on her Bank of America, N.A. account with an account number ending in 5522. *Copy filed as Exhibit 2*.   Ms. Snyder never owed this amount.

18.     Defendant Mandarich and/or Defendant CACH assigned an account number to the account of 120007336412. *See Ex. 2.*   This is not the original account number.

19.     Defendant Mandarich starts its letter by asserting: "Your account has

4

been sold and assigned to our client, CACH, LLC.  This office has been hired to collect the above balance that you owe our client." *See Ex. 2.*

20.    Defendant Mandarich further stated in the May 2, 2015 demand letter: "In making this demand, we are relying entirely on information provided by our client.  At this time, no attorney with our law firm has personally reviewed the particular circumstances of your account." *See Ex. 2.*

21.    Defendant Mandarich then goes on to explain that in spite of the letter being sent on their law firm letterhead, "In sending this letter, this firm is acting solely as a debt collector and not in any legal capacity." *See Ex. 2.*

### *June 16, 2015 Collection Letter*

22.    On or about June 16, 2015, Defendant Mandarich sent Ms. Snyder another letter in an attempt to collect the debt. *Copy filed as Exhibit 3.*

23.    In its June 16, 2015 letter Defendant Mandarich attempts to verify the Bank of America, N.A. account with an account number ending in 5522 by producing two items:  1) an assignment statement from an unknown third party entity, FIA Card Services, N.A., to Defendant CACH, and 2) an account summary statement. *See Ex. 3*.

24.    Again Defendants identify the account with the account number of 120007336412. *See Ex. 3.*  This is not the original account number.

25.     The account summary page explains that the Bank of America account ending in 5522 was placed for collection with Defendant CACH on November 19, 2009 with an account balance of $6,835.10. ***See Ex. 3.***

26.     No records of the underlying account were held by Defendant Mandarich or Defendant CACH.

27.     Instead, Defendants blindly assert the debt is owed by Ms. Snyder and illegally add interest to the account. ***See Ex. 3***.

28.     There were no supporting documents from Bank of America attached to the June 16, 2015 verification letter.

29.     Upon information and belief, Defendants did not review any of the records of the originator of this debt prior to sending the verification letter.

30.     Without reviewing any records of the original creditor to determine if there was a contract signed by Ms. Snyder and, if so, whether the amount of the debt as to principal, interest, and late fees was owed by Ms. Snyder, it was impossible for Defendants to truthfully make a declaration as to the legitimacy of the debt they were collecting.

31.     The amount of debt charged-off by Bank of America, and the amount of debt being collected by Defendant CACH in its June 16, 2015 collection lawsuit is $6,835.10. ***See Ex. 1 & 3.***

32.     The statute of limitations for filing the lawsuit in an attempt to collect

the alleged debt, a consumer credit card bill in the amount of $6,835.10, expired no later than May 2015 since the first delinquency was in April, 2009. ***See Exhibit 1.*** See Haw. Rev. Stat. §657-1.

33.   Defendant Mandarich never even hints to Ms. Snyder that their time to collect this debt had expired, but instead asserts "our firm may continue its collection efforts" in its June 16, 2015 collection letter.

34.   Defendants knew, or should have known, that the statute of limitations for collection of the alleged debt had expired when they sent the June 16, 2015 collection letter to Ms. Snyder.

### *February 24, 2016 Collection Call*

35.   On or about February 24, 2016 Ms. Snyder called Defendant Mandarich to discuss her account.

36.   During the call Defendant Mandarich asserted that it was attempting to collect the debt.

37.   Defendant Mandarich's representative, Gabriel, went on to assert that Ms. Snyder owed Defendant CACH $8,765.10 on her Bank of America, N.A. account with an account number ending in 5522.

### *Attempting To Collect Interest Waived By Original Creditor*

38.   Under federal banking regulations, a credit card debt must be charged off when it is 180 days overdue (it may be charged off earlier). Federal Financial

7

Institutions Examination Council, Uniform Retail Credit Classification and Account Management Policy, 65 FR 36903 (June 12, 2000).

39.   Defendant CACH was not entitled to demand payment of any amount of interest they added to the account after Bank of America charged off the account and waived the accrual of any additional interest on the account.

40.   Charge-off means that the credit card receivable is no longer carried on a bank's books as an asset.

41.   Pursuant to its reporting to Equifax:  Bank of America charged off the alleged debt in October 2009 in the amount of $6,835, and this was the amount of the debt when it was sold by Bank of America on November 19, 2009.  *See Ex. 1, 3.*

42.   Defendant CACH demanded $8,765.10 on May 2, 2015 and as recently as February 24, 2016, which included interest on the charged-off debt, computed at an unknown rate of interest. *See Ex. 2.*

43.   Upon information and belief, Bank of America, from which Defendant CACH allegedly purchased the debt, did not charge interest after charge-off.  This is supported by the fact that Bank of America didn't increase the balance from October 2009 to November 19, 2009, as is demonstrated by Defendants' records. *See Exhibits.*

44.   Defendant CACH was not entitled to collect any interest that Bank of America did not actually charge during the time when Bank of America owned the

debt.

45.     Upon information and belief, it is the policy and practice of Defendant CACH to add interest to debts for the period prior to the date on which it claims to have purchased them, even if the original creditor of the debt did not add interest during that period.

46.     The interest demanded in Defendant CACH's May 2, 2015 letter also included interest added after the date on which Defendants claim Defendant CACH purchased the debt. ***See Ex. 2.***

47.     Upon information and belief, Bank of America intentionally did not charge interest after charge-off of the debt.

48.     Upon information and belief, the standard form credit card agreements used by Bank of America provides that it may change the terms of the agreement from time to time, and that changes beneficial to the consumer such as a reduction in, or waiver of interest may be effected immediately and without notice.

49.     Upon information and belief, as a standard practice, and for a variety of sound business reasons (e.g. tax purposes), Bank of America waives interest on credit card debts after charge-off for as long as it holds the debt.

50.     Upon information and belief, Bank of America, which originated Plaintiff's debt, in accordance with standard business practices, waived interest on Ms. Snyder's credit card debt after charge-off.

51.     If Bank of America waived the right to add interest post charge-off, Defendant CACH acquired the debt, if at all, subject to that waiver.

52.     Upon information and belief, the amount of the debt Defendant CACH allegedly purchased from Bank of America did not include post charge-off interest.

53.     Upon information and belief, Defendant CACH paid a price for the alleged debt based on the balance stated by Bank of America.

54.     Upon information and belief, it is Defendant CACH's standard practice, after paying a price based on an amount that does not include post-charge off interest, to seek collection of post-charge off, pre-acquisition interest not charged by the original creditor.

55.     Upon information and belief, it is Defendant CACH's standard practice, after paying a price based on an amount that does not include post-charge off interest, to seek collection of post-charge off interest which was no longer due pursuant to the agreement between the original creditor and Plaintiff.

56.     The increase in balance as stated by Defendant CACH to Ms. Snyder indicates that pre-judgment interest and/or other fees were being applied to the account despite no judgment ever being approved by a court or no lawsuit even being filed.

57.     Defendants demand odd amounts from Ms. Snyder: *i.e.* the balance

stays the same at $6,835 from October 2009 to November 19, 2009, then mysteriously increases to $8,765.10 as of May 2, 2015, then stays the same through February 24, 2016. ***See Exhibits***.

58.   A calculation of the time passed and the amounts demanded demonstrates that Defendant CACH added interest at an annual percentage rate of 0.00% from October 2009 to November 19, 2009; interest then increases to 4.665% from November 19, 2009 to May 2, 2015; and then interest decreases to 0.00% from May 2, 2015 to February 24, 2016. ***See Exhibits***.

59.   In direct contradiction to the interest they added to the account from November 2009 to May 2015, Defendants didn't add any interest from May 2015 to February 2016.

60.   By communicating to Ms. Snyder that she owed a different and greater amount than what Ms. Snyder actually owed, Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(10), and 1692f(1).

61.   Ms. Snyder has complied with all conditions precedent to bring this action.

## CAUSES OF ACTION

### *COUNT ONE: VIOLATIONS OF*
### *THE FAIR DEBT COLLECTION PRACTICES ACT*

### FIRST VIOLATION OF THE FAIR DEBT COLLECTION
### PRACTICES ACT:
### FALSE OR MISLEADING REPRESENTATIONS

62.    The acts of Defendants constitute violations of the Fair Debt Collection Practices Act.  Defendants' violations of the FDCPA include, but are not limited to, the use of any false, deceptive, or misleading representations or means in connection with the collection of any debt, which is a violation of 15 U.S.C. § 1692e.

63.    Ms. Snyder is confused as to how Defendants calculated the amounts owed and what authority they have to demand inconsistent and unfamiliar rates of interest.

64.    A calculation of the time between the communications and the amounts demanded in the communications shows that Defendants are applying unknown and illegitimate rates of interest.  This makes the balance increase at rates that do not comply with the terms of the initial contract.

65.    Ms. Snyder asserts that the rates of interest applied to her account by Defendant CACH were not the correct contractual rate of interest on her Bank of America account.

66.    By assigning different account balances and unknown rates of interest

to the underlying account, Defendants have confused Ms. Snyder as to what amount of money she owes on this account.

67.    By assigning different interest rates to the same account and demanding interest at a rate that was not the applicable contract rate of interest, Defendants misled Ms. Snyder as to what amount of money she owes on this account.

68.    4.665% is not the contractual rate of interest or a rate allowed by statute.

69.    Defendants engaged in false, deceptive, and misleading representations in connection with the collection of this debt when they added interest to the account at a rate that does not comply with the original contract or any statute.

70.    By adding interest to an account after the original creditor waived its rights to any further interest, Defendants have engaged in false, deceptive, or misleading representations or means in connection with the collection of this debt.

71.    Defendants are demanding interest that was never owed by Ms. Snyder. Such conduct is the use of a false, misleading and deceptive representation or means to collect, or attempt to collect, a debt, and is a violation of 15 U.S.C. §§ 1692e and 1692e(10).

72.    The communications by Defendants were collection communications in violation of numerous and multiple provisions of the FDCPA including, but not

limited to, 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692(e)(5), 1692(e)(10), and 1692(f), amongst others.

## SECOND VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT: <br> FALSE OR MISLEADING REPRESENTATIONS

73.     The acts of Defendants constitute violations of the Fair Debt Collection Practices Act.  Defendants' violations of the FDCPA include, but are not limited to, the use of false, deceptive, or misleading representations in connection with the character, amount, or legal status of the alleged debt, which is a violation of 15 U.S.C. §1692e(2).

74.     The actual amount of the alleged debt is certainly in question.  It is very confusing as to what amount is owed on this account since the amount of $6,835 is charged-off by Bank of America in October 2009; the account balance then stays the same until at least November 18, 2009; then the amount increases to $8,765.10 as of May 2, 2015; but then the amount stays the same again whereby Defendants demand $8,765.10 on February 24, 2016.

75.     Defendants have effectively varied the rates of interest from 0.00%, up to 4.665%, then back down to 0.00%.

76.     By demanding amounts that increase by irregular rates of interest, Defendants have deceived Ms. Snyder as to what amount of money, if any, she owes on this account.

77.     Ms. Snyder asserts that the changing balances demanded by Defendants demonstrate that Defendants have no knowledge of the correct amount owed, if any.

78.     Defendants are attempting to deceive Ms. Snyder and keep her confused as to the amount owed so that if she were to make payments on this account she would never know the actual amount owed, and instead would keep paying indefinitely on fees, interest, or other charges that were never legally owed by her.

79.     Defendants violated 15 U.S.C. §§1692e, 1692e(2)(A), 1692e(2)(B), 1692e(10), 1692f, and 1692f(1) by adding interest to the amount of the debt purchased from Bank of America after the accrual of interest had been stopped by Bank of America at charge-off.

80.     Further, Defendant CACH engaged in a false and deceptive collection practice (contrary to 15 U.S.C. §1692e) and an unfair debt collection practice (contrary to 15 U.S.C. §1692f) by adding unauthorized interest to the alleged debt.

81.     Since the last payment was in April 2009, the statute of limitations had run as of May 2015.  By continuing in its collection efforts and demanding amounts that were no longer owed, Defendants misled Ms. Snyder as to what amount of money she owed on this account.

82.     Defendants assert the money was still due on June 16, 2015 and again

15

on February 24, 2016.   Alternatively, Bank of America's reporting to Equifax confirms that the first delinquency was in April 2009, which was when the breach of contract occurred.   *See Ex. 1,3 & 4*.

83.     By continuing to actively collect the debt after the statute of limitations had expired, Defendants made false representations or implications of the character, extent, or amount of money Ms. Snyder owes.

84.     By verifying the underlying account in their June 16, 2015 letter, Defendants attempted to mislead Ms. Snyder as to when she made her last payment on the account and that she still owes the account.

85.     The Defendants' false representations of the character, amount or legal status of the debt are a use of a false, deceptive, and misleading representations or means in connection with collection of the debt or in an attempt to collect the debt, which is a violation of 15 U.S.C. §§ 1692e and 1692e(10), and are an unfair means to collect or attempt to collect the alleged debt in violation of 15 U.S.C. § 1692f.

## THIRD VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT: UNFAIR PRACTICES

86.     Defendants' violations of the FDCPA also include, but are not limited to, the collection of any amount that is not expressly authorized by the agreement creating the debt or permitted by law, which is a violation of 15 U.S.C. §1692f(1).

87.     The May 2, 2015 collection letter from Defendant Mandarich

demanded interest and fees that were never owed by Ms. Snyder.

88.     The June 16, 2015 verification letter from Defendant Mandarich asserts that Ms. Snyder still owes Defendants, in spite of the applicable statute of limitations having already run on the account.

89.     Defendant Mandarich's representative again demanded the illegitimate interest and fees from Ms. Snyder in the February 24, 2016 communication, which was significantly past the statute of limitations.

90.     Defendants increased the amount they were demanding from Ms. Snyder by irrational and varying rates of interest.

91.     Defendants knew they had no authority, either by contract or statute, to add interest to the account, and so they removed their illegitimate interest from their demands when they verified the account to Ms. Snyder in June 2015.

92.     Defendants applied an interest rate of 4.665% to the account from November 19, 2009 to May 2, 2015. ***See Ex. 2, 3.***

93.     Ms. Snyder disputes that the original contract had an interest rate of 4.665 %, or allowed the imposition of interest rates that vary.

94.     Defendants demanded a rate of interest that was not authorized by the agreement creating the debt or permitted by law.

### ***COUNT TWO: VIOLATIONS OF THE HAWAI'I REVISED STATUTES, UNFAIR OR DECEPTIVE ACTS OR PRACTICES***

95.     A consumer may bring an action based upon unfair or deceptive acts

or practices. Haw. Rev. Stat. §480-2.

96.     Any person may bring an action based on unfair methods of competition declared unlawful by Haw. Rev. Stat. §480.

97.     Ms. Snyder, a consumer, brings this action based upon Defendants' unfair or deceptive acts or practices as well as their unfair methods of competition.

98.     Ms. Snyder has incurred actual damages as a result of Defendants' acts and practices which include postage costs, time off work, travel expenses, and emotional distress.

## FIRST VIOLATION OF THE HAWAI'I REVISED STATUTES: FALSE OR MISLEADING REPRESENTATIONS

99.     The acts of Defendants constitute violations of the Hawai'i Revised Statutes.   Violations include, but are not limited to, any false representation or implication of the character, extent, or amount of a claim against a debtor or alleged debtor, or of its status in any legal proceeding.   Such conduct is a violation of Haw. Rev. Stat. § 443B-18(5).

100.   The underlying debt is disputed.

101.   The communications from Defendants demanded amounts from Ms. Snyder that she did not owe.

102.   A calculation of the time between the communications and the amounts demanded in the communications shows that inconsistent and unknown rates of interest and/or fees were being applied to the account by the Defendants.

103.   Furthermore, the account balance changes at rates of interest that do not comply with the terms of the initial contract.

104.   By assigning different account balances and unknown rates of interest to the underlying account, Defendants have made one or more false representations or implications of the character, extent, or amount of money Ms. Snyder owes on this account.

105.   The rate of interest applied to the account by Defendants, 4.665%, is not the contractual rate of interest.

106.   By assigning different account balances and interest rates to the same account, and demanding an amount that did not comply with the applicable contractual rate of interest, Defendants made one or more false representations or implications of the character, extent, or amount of money Ms. Snyder owes.

107.   By demanding an amount they were not entitled to, Defendants made false representations or implications of the character, extent, or amount of money Ms. Snyder owes on this account.

108.   By attempting to collect unauthorized amounts through false and deceptive communications, Defendants have deceived and/or misled Ms. Snyder as to what amount of money she owes on this account.

109.   By collecting the account past the statute of limitations, Defendants have made a false representation or implication of the character, extent, or amount

of money Ms. Snyder owes.

## SECOND VIOLATION OF THE HAWAI'I REVISED STATUTES: FALSE OR MISLEADING REPRESENTATIONS

110.   Any representation that an existing obligation of the debtor or alleged debtor may be increased by the addition of attorney's fees, investigation fees, service fees, and any other fees or charges when in fact the fees or charges may not legally be added to the existing obligations is a violation of Haw. Rev. Stat. § 443B-18(8).

111.   Upon information and belief, Ms. Snyder asserts that Defendants did not have authority to impose additional fees on the originating account.

112.   By assessing unwarranted interest, fees or charges, as explained in detail above, Defendants have demanded amounts that are not expressly authorized by the agreement creating the debt or permitted by law.

113.   Additionally, Defendants did not have authority to collect the debt after the statute of limitations had ran.

## THIRD VIOLATION OF THE HAWAI'I REVISED STATUTES: THE USE OF UNFAIR PRACTICES IN ATTEMPT TO COLLECT A DEBT

114.   Defendants' violations of the Hawai'i Revised Statutes also include the collection of or the attempt to collect any interest or other charge, fee, or expense incidental to the principal obligation unless the interest or incidental fee, charge, or expense is expressly authorized by the agreement creating the obligation

20

and legally chargeable to the debtor or alleged debtor; or unless the interest or incidental fee, charge, or expense is expressly authorized by law.  Such conduct violates Haw. Rev. Stat. § 443B-19(2).

115.   Ms. Snyder asserts that Defendants did not have authority to impose additional fees on the originating account and she never owed $8,765.10 on the account.

116.   By assessing unwarranted interest, fees or charges, Defendants have demanded amounts that are not expressly authorized by the agreement creating the debt or permitted by law.

117.   Defendants' collection of additional fees are collection attempts for amounts not expressly authorized by the agreement.

118.   A calculation of the time passed and the amounts demanded demonstrates that Defendants applied a rate of interest to the account that was not the contractual rate of interest.

119.   Ms. Snyder asserts that her original contract did not allow for the imposition of interest at a rate of 4.665%.

120.   The communications from Defendants demand very odd amounts from Ms. Snyder and she has been deceived by Defendants' addition of illegitimate interest to this account.

## FOURTH VIOLATION OF THE HAWAI'I REVISED STATUTES: THE USE OF UNFAIR PRACTICES IN ATTEMPT TO COLLECT A DEBT

121.   The acts of Defendants constitute violations of the Hawai'i Revised Statutes.  Violations include, but are not limited to, the collection of or the attempt to collect from a debtor or alleged debtor all or any part of the collection agency's fees or charges for services rendered.  Such conduct is a violation of Haw. Rev. Stat. § 443B-19(3).

122.   Upon information and belief, Ms. Snyder asserts that Defendants did not have authority to impose additional fees on the originating account.

123.   Defendants are attempting to collect their collection agency fees or charges for services rendered, and is thus are violating Haw. Rev. Stat. § 443B-19.

## FIFTH VIOLATION OF THE HAWAI'I REVISED STATUTES: THE USE OF UNFAIR PRACTICES IN ATTEMPT TO COLLECT A DEBT

124.   The collection of or the attempt to collect any interest or other charge, fee, or expense incidental to the principal obligation unless the interest or incidental fee, charge, or expense is expressly authorized by the agreement creating the obligation and legally chargeable to the debtor or alleged debtor; or unless the interest or incidental fee, charge, or expense is expressly authorized by law is a violation of Haw. Rev. Stat. § 443B-19(4).

125.   The amounts demanded by Defendants have increased and decreased

22

drastically.

126. A calculation of the time between the communications and the amounts demanded in them shows that the balance increased and decreased at rates that do not comply with the terms of the original contract.

## SIXTH VIOLATION OF THE HAWAI'I REVISED STATUTES: FALSE REPRESENTATIONS AND THE USE OF UNFAIR PRACTICES IN ATTEMPT TO COLLECT A DEBT

127. Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful. Haw. Rev. Stat. § 480-2.

128. All collection agencies that collect debts from any person who resides or does business in Hawaii must be registered with the Department of Commerce and Consumer Affairs and must comply with the state's laws and rules. Haw. Rev. Stat. § 443B.

129. Defendants collect debts from the people of Hawaii, including Ms. Snyder.

130. Defendants CACH and Mandarich do not currently hold a Hawaii General Excise Tax license.

131. Defendants CACH and Mandarich do not pay the Hawaii General Excise Tax for accounts they collect in the State of Hawaii.

132. Defendants' collection of accounts without paying the Hawaii General

Excise Tax provides them an unfair competitive advantage and violates Hawaii laws or rules, therefore it is a violation of Haw. Rev. Stat. § 443B and Haw. Rev. Stat. § 480.

133.   As a result of Defendants' actions, Ms. Snyder is entitled to an award of actual damages, statutory damages, as well as an award of costs and attorney fees.

### *Respondeat Superior Liability*

134.   In addition to their individual liability under the FDCPA, the acts and omissions of Defendant Mandarich, and any other debt collectors hired as agents by and for Defendant CACH, and who communicated with Plaintiff as further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant CACH.

135.   The acts and omissions by Defendant Mandarich, and any other debt collectors hired as agents by and for Defendant CACH, were incidental to, or of the same general nature as, the responsibilities they were authorized to perform by Defendant CACH in collecting consumer debts.

136.   By committing these acts and omissions against Plaintiff, Defendants Mandarich, and any other debt collectors hired as agents by and for Defendant CACH, were motivated to benefit their principal, Defendant CACH.

137.   Defendant CACH is therefore liable to Plaintiff through the Doctrine

of Respondeat Superior for the intentional and negligent acts, errors and omissions done in violation of federal and state law by the debt collectors employed as agents by Defendant CACH, including, but not limited to violations of the FDCPA, the Hawai'i Revised Statutes, and any other federal or state consumer protection statutes, in their illegal attempts to collect the debt from Plaintiff.

## TRIAL BY JURY

138.   Plaintiff is entitled to and hereby respectfully demands a trial by jury. US Const. amend. 7.  Fed.R.Civ.P. 38.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that judgment be entered against Defendants and in favor of the Plaintiff as follows:

a)   Declaratory judgment that Defendants violated Ms. Snyder's rights under the Fair Debt Collection Practices Act;

b)   Declaratory judgment that Defendants violated Ms. Snyder's rights under the Hawai'i Revised Statutes;

c)   That Plaintiff be awarded actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and every defendant in an amount to be determined at a trial by a jury;

d)   That Plaintiff be awarded statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2);

e)      That Plaintiff be awarded the costs of litigation, including a

reasonable attorney fee, pursuant to 15 U.S.C. §1692k(a)(3);

f)      That Plaintiff be awarded actual damages pursuant to Haw. Rev. Stat.

§  480-13 in an amount to be determined by a jury at trial;

g)      That Plaintiff be awarded statutory damages of not less than $1,000.00

pursuant to Haw. Rev. Stat. § 480-13;

h)      That Plaintiff be awarded the costs of litigation including a reasonable

attorney fee pursuant to Haw. Rev. Stat. § 480-13;

i)      That the Court declare all defenses raised by Defendants to be

insufficient; and

j)      Such other and further relief, including injunctive relief as may be

necessary to effectuate the Court's judgment, or as the Court

otherwise deems just and equitable.

Respectfully submitted this the 7th day of March, 2016.

/s/ Justin A. Brackett
Justin A. Brackett, #9954
Attorney for Plaintiff
1888 Kalakaua Avenue, Suite C-312
Honolulu, TN 96815
(808) 377-6778
justinbrackettlaw@gmail.com